IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIRANDA DIRTH, on behalf of herself and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>OAK STREET HEALTH, INC. and OAK STREET HEALTH MSO, LLC,<br><br>　　　　　Defendants. | Case No. 24 C 5290 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Miranda Dirth sued her former employers Oak Street Health, Inc. and Oak Street Health MSO, LLC (collectively, Oak Street) on behalf of herself and others similarly situated for various claims relating to unpaid wages. Oak Street has moved to compel arbitration. For the reasons stated below, the Court grants Oak Street's motion.

### Background

On March 31, 2022, Oak Street, a healthcare provider, offered Dirth employment as a customer service representative. Before Dirth began employment, Oak Street sent her an eight-page document through Workday, Oak Street's human resource information system. The first four pages were labelled "Employment Agreement." Section 9 of the Employment Agreement included an "Alternative Dispute Resolution" provision, which required both Dirth and Oak Street to submit all disputes that could not be resolved by mediation to arbitration:

> The Company and Employee mutually agree that . . . any controversy or claim shall be submitted to mediation . . . . In the event the Parties fail to agree on a mediator, or mediation is unsuccessful in resolving the claim or controversy within one (1) month after the commencement of mediation, such claim or controversy shall be resolved by arbitration in Illinois under the auspices of the American Arbitration Association.

Decl. of Sanela Fulurija, Ex. A at 6.

The last four pages, labelled "Exhibit A," described a Confidentiality, Non-Competition, and Non-Solicitation Agreement. The Confidentiality Agreement did not include its own arbitration provision. It did, however, expressly reference the Employment Agreement throughout its provisions.

Via the website DocuSign, Dirth was asked to sign at the bottom of the electronic document containing the two agreements. She was not given the option to sign anywhere else other than at the bottom. Dirth electronically signed the bottom of the document through DocuSign on April 5, 2022. A representative of Oak Street countersigned not only at the bottom of the document, but also in a space at the end of the Employment Agreement.

Dirth's employment with Oak Street officially began on April 25, 2022 and continued until her termination around July 2023. Dirth filed suit in June 2024, alleging Oak Street undercompensated her and others similarly situated. Oak Street has moved to compel arbitration.

## Discussion

Under the Federal Arbitration Act, a federal court must stay proceedings and compel arbitration when "one party has failed or refused to comply with an arbitration agreement." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). Before a court may compel arbitration, the moving party must prove the existence of an agreement to

2

arbitrate by a preponderance of the evidence. *Mohammed v. Uber Techs., Inc.*, No. 16 C 2537, 2018 WL 1184733, at *5 (N.D. Ill. Mar. 7, 2018); *see also A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1062 (7th Cir. 2018) (quoting *United Steelworkers of Am. v. Warrior Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)) ("[A] party cannot be required to submit to arbitration any dispute which [the party] has not agreed so to submit."). When the non-moving party challenges the existence of an arbitration agreement, a court may rule on a motion to compel only if there is "no genuine issue of material fact warranting a trial" regarding the existence of an agreement. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002).

### A. Contract formation

Dirth challenges two formative aspects of the alleged arbitration agreement: mutual assent and consideration. "[A]rbitration is a creature of contract." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033 (7th Cir. 2016). "[C]ourts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Whether a contract to arbitrate has been formed is a question governed by state law. *Sgouros*, 817 F.3d at 1033. The parties agree that Illinois law governs that question in this case.

As an initial note, the parties' dispute regarding mutual assent and consideration does not turn on any genuinely disputed facts. Under Illinois law, the construction of a contract is a question of law unless the Court finds a provision to be ambiguous, in which case it becomes a question of fact. *Curia v. Nelson*, 587 F.3d 824, 829 (7th Cir. 2009) (quoting *Cent. Ill. Light Co. v. Home Ins.*, 213 Ill. 2d 141, 154, 821 N.E.2d 206,

3

214 (2004)).  A contract is not ambiguous "simply because the parties offer different interpretations of its language." *Id.*  Because Dirth only disputes the legal consequences of her actions regarding contract formation and not whether those actions occurred, there is no factual dispute that impedes the Court from resolving the motion to compel arbitration.

1. **Mutual assent**

Dirth first argues her signature at the bottom of the document cannot be construed as assenting to the arbitration provision that the document contained.  Illinois law requires only "a manifestation of mutual assent" by the parties to enforce an arbitration agreement.  *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 711 (7th Cir. 2019) (quoting *Zabinsky v. Gelber Grp.*, 347 Ill. App. 3d 243, 249, 807 N.E.2d 666, 671 (2004)).  A signature is just one example of assent—a party named in a contract may also indicate assent through "acts and conduct." *Bauer v. Qwest Commc'ns Co.*, 743 F.3d 221, 227 (7th Cir. 2014) (quoting *Carlton at the Lake, Inc. v. Barber*, 401 Ill. App. 3d 528, 531, 928 N.E.2d 1266, 1270 (2010)); *see also Gupta*, 934 F.3d at 710 (citing 9 U.S.C. § 3) ("Although [the Federal Arbitration Act] requires arbitration agreements to be in writing, it does not require them to be signed.").  Even silence can indicate assent "if the circumstances make it reasonable to do so." *Gupta*, 934 F.3d at 711.

First, the Court finds that Dirth's signature at the end of the document containing the arbitration provision establishes mutual assent by at least a preponderance of the evidence.  Dirth was sent a single eight-page document, and she signed in the only place the signature software allowed her to sign—at the very bottom.  It is common

4

sense that a signature at the bottom of a contract assents to what was described before. Further, Dirth was on notice that she was assenting to the Employment Agreement when she signed at the bottom, as the immediately preceding Confidentiality Agreement repeatedly referenced the Employment Agreement as if it had already been agreed to. *See, e.g.*, Decl. of Sanela Fulurija, Ex. A at 9 (emphasis added) ("Employee acknowledges and agrees that, *pursuant to the Employment Agreement* . . . Employee has received good and valuable consideration . . . ."). The fact that Dirth signed in the one place she could, at the bottom of a single electronic document that repeatedly referenced the Employment Agreement throughout, indicates her assent to the arbitration provision the Employment Agreement included.

Dirth contends that her signature at the bottom should be construed as applying only to the immediately preceding Confidentiality Agreement. She highlights that Oak Street's representative (who signed after Dirth did) signed not just under the Confidentiality Agreement, but also directly under the Employment Agreement. Based on this discrepancy, she argues her signature was also required under the Employment Agreement to make its arbitration provision binding.

Despite Dirth's repeated emphasis that the document contained "twin signature blocks," one for each agreement, the contract does not indicate that she was expected to sign directly under the Employment Agreement. As stated earlier, the only place the signature software allowed Dirth to sign was at the bottom of the entire electronic document. Nothing immediately under the Employment Agreement indicated a space for her to sign. There was no blank line, date line, or unchecked box, of the sort that a signature block would include. The fact that Oak Street had a company representative

5

sign immediately under the Employment Agreement does not change this reality; what is significant here is how the document was presented to Dirth. Because Dirth has not even provided evidence that she *could* have signed directly under the Employment Agreement, let alone that she was required to, the absence of her signature at that spot is of no consequence. Rather, her signature at the bottom of the full document indicates her assent to the document as a whole.

  Second, even if the Court were to assume that Dirth's signature at the bottom applied only to the immediately preceding Confidentiality Agreement, her continued employment with Oak Street after receiving the Employment Agreement manifested assent through conduct. As stated above, a signature is not required to assent to an arbitration agreement. *See Bauer*, 743 F.3d at 227. Certain actions, such as commencing or continuing employment after receiving notice of an arbitration requirement, can also indicate assent. *See Cervantes v. Bridgestone Retail Operations, LLC*, No. 20 C 2164, 2020 WL 7480700, at *3–4 (N.D. Ill. Dec. 18, 2020) (noting an "employee's continued performance on the job after receiving a contract related to . . . employment may signify . . . assent to the contract" under Illinois law). After receiving the Employment Agreement, Dirth did not express any disagreement with the arbitration provision before commencing employment. She had ample opportunity to do so—she signed the bottom of the document containing the arbitration provision roughly twenty days before her start date. Her commencement of employment with Oak Street despite notice of the arbitration provision thus indicates assent to arbitration.

  Dirth responds that she could not have assented through conduct, as her signature was a condition precedent to the execution of the Employment Agreement.

But the case she relies on, *Romano v. First Midwest Bancorp, Inc.*, No. 20 C 7268, 2024 WL 1363669 (N.D. Ill. Mar. 30, 2024), is readily distinguishable. In *Romano*, the district court found both the language of the contract and its formatting indicated a signature was required to execute the contract. *Id.* at *5. The court first noted that the contract repeatedly referenced required signatures: "The Unsigned Agreement states that it 'shall be in effect from the date signed by the Company' . . . and states, 'Your signature below will acknowledge your agreement with these terms.'" *Id.* The court then emphasized that the formatting of the contract further indicated a signature requirement, as there were "spaces for the parties' signatures." *Id.* Based on these repeated references to signatures and the space allotted for signatures in the contract, the court concluded that the contract had to be signed by both parties to be binding. *Id.*

In this case, the contract lacks any reference to a required signature for either party. Although Dirth attempts to highlight passages that she believes indicate a signature requirement, none of them state that a signature is required to make any agreement in the document binding. The only passage that even mentions a signature is in the context of contract modification: "This Agreement may not be modified, amended, renewed or terminated except by an instrument in writing, signed by the Employee . . . ." Decl. of Sanela Fulurija, Ex. A at 7. Dirth does not explain how this passage, or any of the others she identifies, indicates a signature requirement for the *original* agreement—indeed, the plain language of this provision indicates exactly the opposite. Further, as discussed above, the Employment Agreement in this case—if considered just to include the first four pages—lacked any space for Dirth to sign in the electronic version she received. This is different from the agreement in *Romano*; Dirth

7

had no option to sign except at the bottom of the document.

Therefore, the Court finds that both the signature at the bottom of the document and Dirth's commencement of employment after receiving notice of the arbitration provision indicate mutual assent to arbitration by a preponderance of the evidence.[1]

### 2. Consideration

Dirth next argues that no agreement to arbitrate could be formed due to a lack of consideration. At the outset, the arbitration provision makes clear that Dirth did receive consideration for agreeing to arbitrate, in the form of initial "employment," "continued employment," "receipt of compensation," "other benefits," and Oak Street's "agreement herein to arbitrate." Decl. of Sanela Fulurija, Ex. A at 6. Dirth contends, however, that continued employment cannot serve as adequate consideration, citing *Gibson v. Neighborhood Health Clinics*, 121 F.3d 1126, 1132 (7th Cir. 1997). Although *Gibson* does state that the "mere fact of continued employment does not constitute consideration" in the absence of a "specific promise," the Seventh Circuit emphasized that "[a]n employer's specific promise to continue to employ an at-will employee may provide valid consideration for an employee's promise to forgo certain rights." *Id.* The arbitration provision did this and more—it specifically promised that Dirth would not only

---

[1] Dirth, citing only out-of-circuit caselaw, also argues that the merger clause indicates a signature requirement. Decisions from one circuit are "not binding on courts in other circuits"—they are only persuasive. *Hays v. United States*, 397 F.3d 564, 567 (7th Cir. 2005). The Court is not persuaded that a merger clause, which states that an agreement is intended to be the final and complete contract, requires a signature to be executed for the contract to be effective in the first place. Even accepting that a merger clause could indicate a signature requirement, it is just one indicator. Dirth's commencement of employment after receiving notice of the arbitration agreement and her signature at the bottom of the document including the arbitration provision outweigh any contrary indication.

have the benefits inherent in "continued employment," but also would receive a reciprocal promise by Oak Street to arbitrate in exchange for her agreement to arbitrate.[2] Decl. of Sanela Fulurija, Ex. A at 6. The Court finds by a preponderance of evidence that Dirth received adequate consideration for her agreement to arbitrate.

For the reasons described, Oak Street has established by a preponderance of the evidence that there is an arbitration agreement between the parties.

## B. Arbitrability

As detailed above, "judges must decide that a contract has been formed before they may order arbitration." *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022). But once a court has determined a contract to arbitrate exists, "an arbitration clause may delegate all other issues, including defenses, to the arbitrator." *Id.* There must be "clear and unmistakable" evidence that the parties "agreed to arbitrate arbitrability" for issues concerning the arbitrator's jurisdiction and power to be delegated to the arbitrator. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

"[W]here the parties agree to arbitration pursuant to the rules of the American Arbitration Association (AAA), the parties incorporate the AAA's rules into the arbitration agreement." *Dunston v. R.H. Love Galleries, Inc.*, No. 07 C 5113, 2008 WL 2339564, at *2 (N.D. Ill. June 4, 2008) (citing *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d

---

[2] In arguing there was a lack of consideration, Dirth also contends that the reciprocal promise to arbitrate by Oak Street is illusory and unconscionable due to Oak Street having more power to breach the agreement than its employees. These arguments concern defenses to enforcement of the contract, not formation. As stated below, concerns about enforcement have been delegated to the arbitrator, so the Court does not reach these issues.

9

1263, 1272 (7th Cir. 1976)). Rule 6 of the AAA's Employment Rules and Mediation Procedures establishes that arbitrators have the power to rule on their own jurisdiction: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *Rule 6*, Employment: Arbitration Rules and Mediation Procedures, American Arbitration Association, https://www.adr.org/sites/default/files/Employment%20Rules.pdf. In accordance with this rule, federal courts both in the Seventh Circuit and elsewhere "repeatedly hold that 'an arbitration provision that incorporates the rules of the [AAA] demonstrates an intent to submit gateway issues'" of arbitrability to the arbitrator. *Snow v. Pepsi MidAmerica Co.*, No. 21 C 1206 DWD, 2022 WL 2106249, at *4 (S.D. Ill. June 10, 2022) (quoting *Clark v. Snap, Inc.*, No. 21 C 9 DWD, 2021 WL 2376359, at *3 (S.D. Ill. June 10, 2021), *aff'd sub nom K.F.C. v. Snap Inc.*, 29 F.4th 835 (7th Cir. 2022)); *see also Wal-Mart Stores, Inc. v. Helferich Pat. Licensing, LLC*, 51 F. Supp. 3d 713, 720 (N.D. Ill. 2014) (collecting cases, both in this circuit and others, holding the "incorporation of the AAA Rules constitutes 'clear and unmistakable' evidence that the parties intended the question of arbitrability to be decided by an arbitrator").

In this case, the arbitration provision incorporated the AAA rules. It states that any claim or controversy not resolved by mediation "shall be resolved by arbitration in Illinois under the auspices of the American Arbitration Association." Decl. of Sanela Fulurija, Ex. A at 6. Dirth does not dispute Oak Street's contention that this provision incorporated the AAA rules.[3] She concedes that most issues, including those

---

[3] It is noteworthy that the arbitration provision only states that arbitration will occur under the "auspices" of the AAA. Most cases that involve the incorporation of the AAA's rules explicitly use the term "rules." *See, e.g.*, *Snow*, 2022 WL 2106249, at *4 (finding

"regarding unconscionability" and "class waiver," are "delegated to the arbitrator" if the arbitration agreement is binding. Mem. of L. in Opp. to Defs.' Mot. to Compel Arbitration, at 15.

Dirth nonetheless asks the Court to strike the provisions requiring the arbitration costs to be shared equally and entitling the prevailing party to attorneys' fees, arguing these provisions are meant to discourage employees from pursuing arbitration. The Court notes in this regard that the AAA rules, which the arbitration agreement incorporates, cap an employee's payment at $350 and provide that if there is an adverse material inconsistency between the arbitration agreement and the AAA's rules, the AAA rules govern. In addition, Oak Street has committed to pay "the entirety of the arbitrator's fees in this litigation." Def.'s Mem. of L. in Supp. of its Mot. to Compel Arbitration, at 4. The Court takes that representation as true and finds that the issue raised by Dirth is moot. Dirth suggests that Oak Street could do an about-face once the matter gets to arbitration, but if Oak Street reneges on the commitment it made to the Court, Dirth should promptly file a motion for reconsideration, and the Court will address whether the arbitration agreement should be invalidated for being "prohibitively expensive." *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003) (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000)).

---

incorporation when the agreement stated arbitration will occur "by the Rules and Procedures of AAA's Employment Arbitration Rules"); *Wal-Mart*, 51 F. Supp. 3d at 719 (finding incorporation when the agreement stated arbitration will occur "under the Rules of the [AAA]"). Yet Dirth makes no argument that use of the term "auspices" is materially different from "rules" for incorporation purposes. Any argument otherwise is therefore forfeited.

C. **Individual arbitration**

Finally, Oak Street argues that the Court should order Dirth to arbitrate on an individualized basis. But "[t]he availability of class or collective arbitration" is also a "question of arbitrability." *Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 507 (7th Cir. 2018). Oak Street wants it both ways. Despite arguing that issues of arbitrability have been delegated to the arbitrator, Oak Street asks the Court to decide whether the arbitration agreement includes a class waiver. It gives no explanation for why a class waiver determination, which implicates the scope of the arbitration agreement, differs from arbitrability determinations delegated to the arbitrator. Oak Street's reliance on *Lamps Plus, Inc. v. Varela*, 587 U.S. 176 (2019), does not move the needle either. Although the Supreme Court held that "[c]ourts may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis," nowhere did it state that this determination cannot be delegated to the arbitrator. *See id.* at 189. Because the arbitration agreement in this case delegated issues of arbitrability to the arbitrator, whether or not Dirth can arbitrate her claims on a classwide or collective basis must be decided by the arbitrator.

## Conclusion

For the reasons stated above, the Court grants Oak Street's motion to compel arbitration and stay proceedings [dkt. no. 17]. Proceedings on Dirth's claims against Oak Street are stayed. The parties are directed to file a joint status report regarding the status of arbitration proceedings on August 15, 2025. A telephonic status hearing is set for August 22, 2025 at 8:55 a.m., using call-in number 650-479-3207, access code

2305-915-8729.

Date: February 18, 2025

_____
MATTHEW F. KENNELLY
United States District Judge

13